**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER MURPHY, | ) | CASE NO. 1:14-cv-02445 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| BRIGHAM SLOAN, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner Christopher Murphy ("Murphy") challenges the constitutionality of his

conviction in the case of *State v. Murphy*, Cuyahoga County Court of Common Pleas Case No.

CR-11-558029-A.  Murphy, represented by counsel, filed his Petition for a Writ of Habeas

Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on November 5, 2014.  On January 23, 2015,

Warden Brigham Sloan ("Respondent") filed his Answer/Return of Writ.[1]  (ECF No. 9.)  Murphy

filed a Traverse on June 6, 2015, to which the Respondent replied.  (ECF Nos. 19 & 21.)  For

reasons set forth in detail below, it is recommended that Murphy's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

---

[1] Murphy sought and received two extensions of time to file his Traverse.  (ECF Nos. 11,
13.)  In lieu of filing his Traverse, on April 7, 2015, Murphy filed a Motion for Stay and
Abeyance.  (ECF No. 14.)  That motion was denied.  (ECF No. 18.)

of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v.*

*Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts

underlying Murphy's conviction as follows:

> [*P1]  Defendant-appellant Christopher Murphy appeals from his sentence for
> aggravated burglary and felonious assault, both with firearm specifications.
> Murphy argues that the trial court should have merged the firearm specifications,
> that his plea was not entered knowingly and voluntarily, that his trial counsel was
> ineffective, and that the trial court should have merged the aggravated burglary
> and the felonious assault charges.  We disagree.  The trial court's final judgment
> is affirmed.

> [*P2]  On November 11, 2011, Murphy and three unknown juveniles entered the
> Terrace Tower apartment building with firearms.  Murphy and the juveniles
> entered one of the apartments, robbing at gunpoint Lawrence Tanner, Tonia
> Colvin-Ward, and Khalilah Thomas. Murphy pistol-whipped Tanner and
> Colvin-Ward.  After exiting the apartment, Murphy attempted to flee the building
> and, in doing so, he brandished a firearm, threatening security guard Timothy St.
> Clair.

> [*P3]  As a result of the incident, Murphy was charged in a thirteen-count
> indictment. Murphy pleaded guilty to aggravated burglary (R.C. 2911.11(A)(2))
> and to felonious assault (R.C. 2903.11(A)(1)).  The state nolled the other counts.
> Both counts included one and three-year firearm specifications (R.C.
> 2941.141(A); R.C. 2941.145(A)).  The two charges were divided amongst the four
> victims as follows: Tanner (both counts), Colvin-Ward (both counts), Thomas
> (aggravated burglary), and St. Clair (felonious assault).

> [*P4]  Murphy was sentenced to twenty-years imprisonment. Murphy's sentence
> included eight years on the aggravated burglary charge and six years on the
> felonious assault charge to be served consecutively.  The trial court merged the
> one-year firearm specifications with the three-year firearm specifications but
> imposed the two three-year specifications consecutively to each other and to the
> underlying offenses.

*State v. Murphy*, 2013-Ohio-2196 at ¶¶1-4 (Ohio Ct. App., May 30, 2013).

-2-

## II. Procedural History

**A.  Conviction**

On January 25, 2012, a Cuyahoga County Grand Jury charged Murphy with three counts of kidnapping in violation of Ohio Revised Code ("O.R.C.") § 2905.01(A)(2); one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1); one count of robbery in violation of O.R.C. § 2911.02(A)(2); three counts of aggravated burglary in violation of O.R.C. § 2911.11(A)(1) & (A)(2); three counts of felonious assault in violation of O.R.C. § 2903.11(A)(2); one count of burglary in violation of O.R.C. § 2911.12(B); and, one count of petty theft in violation of O.R.C. § 2913.02(A)(1).  (ECF 9-1, Exh. 1.)  All charges, except petty theft, carried one and three year firearm specifications pursuant to O.R.C. §§ 2941.141(A) & 2941.145(A).  *Id*.  Finally, all charges with the exception of burglary and petty theft carried repeat violent offender specifications under O.R.C. § 2941.149(A).  *Id*.

On February 2, 2012, Murphy, represented by defense counsel, entered guilty pleas to one count of aggravated burglary and one count of felonious assault, both carrying one and three year firearm specifications.  (ECF No. 9-3, Exh. 3.)  The remaining charges were nolled.  *Id*.

On February 21, 2012, Murphy was sentenced to eight years in prison for aggravated burglary, six years for felonious assault, and three years on each gun specification.[2]  (ECF No. 9, Exhs. 4 & 5.)  The sentences were to be served consecutively for an aggregate prison term of twenty (20) years.  (ECF No. 9-4, Exh. 4.)

---

[2]  A typographical error in the original journal entry indicating a sentence of only five years for aggravated burglary was corrected by a subsequent *nunc pro tunc* entry.  (ECF No. 9, Exhs. 4 & 5.)

-3-

**B.    Direct Appeal**

On March 21, 2012, Murphy, through new counsel Erika Cunliffe,[3] filed a Notice of

Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court")

raising the following assignments of error:

1.    The trial court violated Mr. Murphy's rights under the Double Jeopardy
clause by failing to merge the gun specifications in Count Six and Nine
because the offenses were committed as part of the same transaction.

2.    The trial court violated Mr. Murphy's rights under the Double Jeopardy
clause by failing to merge the aggravated burglary and felonious assault
charges because the offenses were allied.

(ECF No. 9, Exhs. 6 & 7.)

Murphy was also granted leave to raise the following supplemental assignments of error:

3.    Christopher Murphy's guilty plea was not entered knowingly and
intelligently because the trial court advised him during his plea colloquy that
his sentences on the firearm specifications would merge   then concluded at
sentencing that they need to be imposed consecutively.

4.    Trial counsel provided ineffective representation at Mr. Murphy's change of
plea hearing by erroneously advising him that the law required the sentences
imposed on the two firearm specifications to merge, when the law in fact
appears to require the two mandatory gun specification sentences to be
served consecutively.

(ECF No. 9, Exhs. 9-10, 12.)

On March 28, 2013, Murphy, through counsel, filed a motion to stay his appeal pending the

outcome of a motion to withdraw his guilty plea filed the previous day.  (ECF No. 9-14 at 3.)

The motion to stay was denied.  (ECF No. 9-15, Exh. 15.)

On May 30, 2013, the state appellate court affirmed Murphy's conviction and sentence.

---

[3]  Ms. Cunliffe is also counsel of record in the instant case.

-4-

(ECF No. 9-16, Exh. 16.)

On July 15, 2013, Murphy, through counsel, filed a Notice of Appeal with the Supreme

Court of Ohio raising the following propositions of law:

I.    A guilty plea is not entered knowingly and intelligently where the court fails to advise the defendant during his plea colloquy of the mandatory consecutive nature of the sentences that he will receive.

II.    Trial counsel provides ineffective assistance of counsel when she fails to adequately familiarize herself with changes in the law where those changes impact the outcome of her client's case.

(ECF No. 9, Exhs. 17 & 18.)

On November 6, 2013, the Court declined to accept jurisdiction of the appeal pursuant to

S. Ct. Prac. R. 7.08(B)(4).  (ECF No. 9-20, Exh. 20.)

**C.   Motion to Withdraw Guilty Plea**

On March 27, 2013, Murphy, through counsel Cunliffe, filed the aforementioned motion to

withdraw his guilty plea.  (ECF No. 9-21, Exh. 21.)  Therein, the following arguments were

raised:

1.    Mr. Murphy's guilty plea was not knowing and intelligent because he entered it without understanding that the law required the court to impose multiple mandatory consecutive terms.

2.    When it accepted Mr. Murphy's guilty plea, the fact that Mr. Murphy was not aware of his sentencing exposure compromised the voluntariness of that guilty plea.

3.    Trial counsel failed to advise Mr. Murphy before he entered his guilty plea of the likelihood that his sentences would not merge and that the law required the mandatory sentences imposed on the two firearm specifications to be served consecutively to each other.

(ECF No. 9-21, Exh. 21.)

On April 12, 2013, Murphy's motion to withdraw his guilty plea was denied.  (ECF No. 9-23, Exh. 23.)

Almost two years later, on April 7, 2015, the same day he requested to stay the instant action, Murphy requested leave to file a delayed appeal with the state appellate court from the order denying his motion to vacate his guilty plea.  (ECF No. 14-1.)  According to the state appellate court's online docket, the motion for delayed appeal was denied without an opinion on April 22, 2015.

On May 19, 2015, Murphy filed a notice of appeal with the Supreme Court of Ohio.  (ECF No. 17-1.)  As of today's date, October 27, 2015, no ruling has been made.

**D.    Federal Habeas Petition**

On November 5, 2014, Murphy filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> **GROUND ONE**: Guilty plea invalid because trial court advised defendant that it was possible for him to receive an eight-year sentence, when in fact as a matter of law that was not possible.
>
> *Supporting Facts*:
>
> 1.    Court advised defendant that he could receive an eight-year sentence if he pled guilty.
>
> 2.    In fact, the minimum sentence was 11 years.
>
> 3.    But for the incorrect advice on the minimum sentence Defendant would not have pled guilty.
>
> **GROUND TWO**: Trial counsel provided ineffective assistance in advising Defendant that he could receive a sentence of six years when in fact he could not have as a matter of law.
>
> *Supporting Facts*:

I.    Counsel advised me that as a matter of law I could receive a sentence of six years.

II.    As a matter of law the minimum sentence I could have received was eleven years.

III.    But for this erroneous advice I would not have pled guilty.

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

**A.  Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.  Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways.  *Id*.  First, a petitioner may procedurally

default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's

---

[4] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense

impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough    a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

## C.  Application to Murphy

In his Answer/Return of Writ, Respondent did not argue that ground one was procedurally defaulted. (ECF No. 9 at 8-12.) However, in his reply to the Traverse, Respondent argued for the first time that ground one is procedurally defaulted. (ECF No. 21 at 1-2.) The Court declines to address Respondent's procedural default argument as ground one can easily be decided on the

merits.[5]  As the United States Supreme Court has observed, federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *accord Swanigan v. Sherry*, 502 Fed. App'x 544, 546 (6th Cir. 2012).

    Conversely, Respondent did argue both in the Return of Writ/Answer as well as in his response to the Traverse that ground two is procedurally defaulted.  (ECF No. 9 at 13-25, ECF No. 21 at 10-14.)  In ground two of the Petition, Murphy alleges that he received ineffective assistance of counsel in that his attorney at the plea stage erroneously told him that he *could* receive a sentence as short as six years.  (ECF No. 1-1 at 7.)  However, such an argument was never advanced by Murphy on direct appeal.  In his fourth assignment of error    the closest Murphy came to raising the issue    it was asserted that trial counsel was ineffective at the plea hearing by erroneously advising him that the law required the sentences associated with the two firearm specifications to merge when the law actually requires them to be served consecutively.  (ECF No. 9-10 at 9-13.)  Though somewhat related, the Court does not construe this as the same as asserting a six-year sentence was possible.  "Any ineffective- assistance claims that [petitioner] could have asserted in his direct appeal, but did not, are defaulted under the Ohio doctrine of *res judicata*."  *King v. Bradshaw*, 2015 U.S. Dist. LEXIS 65849 at *15 (N.D. Ohio Apr. 20, 2015) (citations omitted).

———————————————

[5]  Furthermore, the Court disagrees with Respondent's assertion that Murphy raised this argument for the first time in his Traverse.  (ECF No. 21 at 1-2.)

Murphy made a similar argument to the one contained in ground two of the petition in his motion to withdraw his guilty plea, but that argument is also not identical.  Therein, Murphy argued, for the first time, that counsel *promised* him he would receive only a six-year sentence.[6] (ECF No. 9-21, Exh. 21.)  This argument is distinct from the assertion in the instant petition that counsel merely advised Murphy that a six-year sentence *could* be imposed.  In any event, this argument was not timely appealed and is unexhausted, it would be defaulted even if raised.  The motion to withdraw was denied (ECF No. 9-23, Exh. 23) and Murphy's motion for delayed appeal, filed almost two years later, was also denied.  His appeal to the Ohio Supreme Court remains pending.

Ohio Appellate Rule 4 requires judgments or orders being appealed to be initiated within thirty days, and Ohio courts have deemed motions to withdraw guilty pleas as subject to the rule. *See, e.g., State v. Lewis*, 2011-Ohio-2014 at ¶¶21- 22 (Ohio Ct. App. April 27, 2011) (finding that an appeal from the denial of a motion to withdraw a guilty plea was untimely when filed

---

[6] This argument, that counsel promised Murphy a specific sentence of six years, appears nowhere in the petition or traverse.  (ECF Nos. 1 & 19.)  Therefore, the Court does not construe the petition or traverse as raising such an argument. It bears noting that an affidavit from Murphy's plea counsel attached to the motion to withdraw specifically stated "I did not promise [Murphy] he would receive any specific term of years." (ECF No. 9-21 at Exh. 2.)  Murphy also emphatically denied at the plea hearing that any threats or promises had been made to him inducing him to plead guilty.  (ECF No. 10-1, Tr. 4.) Later during the plea proceedings, the Court again asked him if any promises had been made and Murphy stated "no."  (ECF No. 10-1, Tr. 11.)  The Court specifically asked: "Do you understand there's no promise of a particular sentence?" and Murphy indicated he understood.  *Id*.  As such, his self-serving affidavit contradicts his own sworn statements in open court, rendering his claim of dubious merit.  *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *accord Akemon v. Brunsman*, 2007 WL 2891012, at *13 (S.D. Ohio Sept. 28, 2007) ("[T]he Court will indulge a strong presumption that statements made by the parties at the plea hearing were truthful.")

-12-

beyond the thirty day time limit contained in Ohio App. R. 4, thereby depriving the court of

jurisdiction to consider the merits); *State v. Monroe*, 2012-Ohio-239 at ¶3 (Ohio Ct. App. Jan.

24, 2012) (recounting that it had previously denied as untimely an appeal from a motion to

withdraw a guilty plea, which was not filed until several months after the denial); *State v. Helser*,

2009-Ohio-3155 at ¶8 (Ohio Ct. App. June 29, 2009) (applying the thirty-day time requirement

of Ohio App. R. 4 to an appeal from the denial of a motion to withdraw guilty plea made

pursuant to Ohio Crim R. 32.1, but finding the appeal was timely filed given the delayed

journalization of the trial court's order).

     Furthermore, federal district courts in Ohio have found "[t]he procedural ground of

untimeliness is also adequate because dismissing an appeal for not being filed 'within thirty days

of the later entry of the judgment or order appealed' is a firmly established practice in Ohio

pursuant to Ohio R. App. P. 4(A) absent a showing of 'good cause' for the delay pursuant to

Ohio R. App. 14(B)." *Williams v. Sheets*, 2007 U.S. Dist. LEXIS 4147 at *8 (S.D. Ohio, Jan. 19,

2007); *see also Richey v. Miller*, 2012 U.S. Dist. LEXIS 23426 (S.D. Ohio, Feb. 4, 2012)

(finding Ohio App. R. 4 was a firmly established and regularly followed procedural rule), *aff'd

by* 2012 U.S. Dist. LEXIS 69318 (S.D. Ohio May 17, 2012).

     Regardless of whether the Court construes ground two as arguing that counsel promised

Murphy a six-year sentence or merely advised him that such a sentence was theoretically

possible, both are procedurally defaulted.  Murphy has not asserted any cause or prejudice

sufficient to excuse the default.  Nonetheless, in Murphy's Traverse, counsel appears to reverse

course and backtrack from the argument raised in ground two of the Petition.  Instead Murphy

resurrects the same argument he raised before the state appellate court    that trial counsel

-13-

misinformed him that the firearm sentences would run concurrently instead of consecutively as
mandated by law.  (ECF No. 19 at 8-11.)  In as much as this argument was actually addressed by
the state courts, this Court will consider it on the merits below.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The
relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States
Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11,
2012); *Renico v Lett,* 559 U.S.   , 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529
U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an
explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and
standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."
*Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The
Supreme Court has indicated, however, that circuit precedent does not constitute "clearly

established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, \*6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, U.S. , 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id*. at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was

-15-

unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not

function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation

marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking

in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *Id*. at 786 87.  This is a very high standard, which

the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet,

that is because it is meant to be.")

**A. Ground One: Minimum Sentence**

In his first ground for relief, Murphy asserts that his guilty plea is invalid because the trial

court allegedly misinformed him that an eight-year sentence was possible when the lowest

possible sentence was actually eleven years.  (ECF No. 1-1 at 5-6.)  Specifically, Murphy argues

that "[w]hen a trial court taking a guilty plea erroneously understates to the defendant the

minimum he is facing, the guilty plea is invalid." *Id*.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently.  *See*

*United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007), *citing Brady v. United States*, 397 U.S.

742, 748, 90 S. Ct. 1463 (1970) ("Waivers of constitutional rights not only must be voluntary but

must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances

and likely consequences.")  A trial court should ensure that a "defendant's plea is voluntary and

that the defendant understands his or her applicable constitutional rights, the nature of the crime

charged, the consequences of the guilty plea, and the factual basis for concluding that the

defendant committed the crime charged." *Id*., *quoting United States v. Webb*, 403 F.3d 373,

-16-

378-79 (6th Cir. 2005); *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988).  "The defendant need only be aware of the direct consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea."  *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (citations omitted).

The state appellate court addressed Murphy's argument as follows:

[*P9]  In his third assignment of error, Murphy argues that his plea was not entered knowingly and intelligently because, according to Murphy, the trial court told him at the plea colloquy that the firearm specification underlying the aggravated burglary would merge with the firearm specification underlying the felonious assault.  The record does not support Murphy's contention, and we overrule the assignment of error.

[*P10]  According to Crim.R. 11(C)(2)(a) and (b), before a trial court may accept a guilty plea, it must make several findings, including that the defendant is making the plea voluntarily, that the defendant understands the nature of the charges against him and the maximum penalty involved, and that the defendant understands the effect of his guilty plea.  On appeal, we review whether the trial court substantially complied with the procedures set forth in Crim.R. 11(C)(2)(a) and (b). *State v. Veney*, 120 Ohio St.3d 176, 2008 Ohio 5200, 897 N.E.2d 621, ¶ 14-17. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v. Nero, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

[*P11]  Even where we determine that the trial court did not substantially comply with Crim.R. 11(C)(2)(a) and (b), we will not vacate a guilty plea unless the defendant can show prejudice.  *Veney* at ¶15.  The test for prejudice is whether the plea would have otherwise been made.  *Id*.

[*P12]  Murphy asserts that at two different points during the plea colloquy the trial court misled him into believing that the firearm specifications for the aggravated burglary would merge with the firearm specifications for the felonious assault. But the portions of the transcript relied on by Murphy do not support this contention.

[*P13]  Murphy first points to a section of the plea colloquy where the trial court separately discussed the aggravated burglary charge and the felonious assault charge. When discussing the aggravated burglary charge, the trial court informed Murphy that it would merge the one-year specification with the three-year

-17-

specification. Next, the trial court discussed the felonious assault charge and explained that the one-year specification in conjunction with that charge would merge with the three-year specification. The trial court did not state that the firearm specification for the aggravated burglary would merge with the firearm specification for the felonious assault.

[*P14]  Next, Murphy points to a hypothetical that the trial court presented at the plea colloquy. In that hypothetical, the firearm specification for the aggravated burglary charge merged with the firearm specification for the felonious assault. But nowhere in the transcript does the trial court state that it planned to sentence Murphy as such.  In fact, just the opposite: the trial court started the hypothetical by stating, "This is not a promise of a sentence." Tr. 8.  Later, the trial court asked Murphy, "Do you understand there's no promise of a particular sentence?" to which Murphy replied, "I understand."  *Id*. at 11.

[*P15]  Importantly, the trial court informed Murphy that the maximum sentence that it could impose was 25 years.  *Id*. at 14.  This amount of time reflects a maximum sentence of eleven years for the aggravated burglary, with three years for the firearm specification, and eight years for the felonious assault, with three years for the firearm specification, all of which would run consecutively. Accordingly, when the trial court informed Murphy that the maximum sentence was 25 years, the trial court was also making clear that it was not promising Murphy that the firearm specifications would merge.  Murphy indicated that he understood that the maximum time he could receive was 25 years and that he wanted to plead guilty.  *Id*. at 15.

[*P16]  At another point during the plea colloquy, the trial court informed Murphy that he could serve six years on the firearm specifications, which, again, indicates that Murphy was informed that the firearm specifications could run consecutively. *Id*. at 11. The trial court made no promise to Murphy that the firearm specifications would merge, and the trial court substantially complied with Crim.R. 11.

[*P17]  Finally, Murphy has not argued that he suffered prejudice.  He makes no assertion in his appeal briefs that he would not have pleaded if he knew that the firearm specifications would not merge.  We overrule Murphy's third assignment of error.

*Murphy*, 2013-Ohio-2196 at ¶¶9-17

First, the Court agrees with Respondent that Murphy's third assignment of error before the

state appellate court is not identical to the argument raised in ground one of the petition.

-18-

Nonetheless, the two arguments are related.  Murphy's claim   that his guilty plea is invalid due to an alleged failure to accurately inform him of the minimum sentence   is premised on his state court argument that he was misinformed that the two three-year firearm specifications could merge with one another.  Without the possibility of merger, however, Murphy maintains the hypothetical eight-year sentence discussed during the plea hearing was misleading.

   This Court disagrees and finds nothing unreasonable about the state court's determination of the facts in light of the evidence presented.  The Court has reviewed the transcript of the plea proceedings and finds the state court's characterization of what transpired to be accurate.  When discussing Count 6, the aggravated burglary charge to which Murphy plead guilty, the court expressly stated that it could impose a sentence of three to eleven years[7] on the base charge in addition to the one and three year firearm specifications associated with that charge, which had to be served "prior to and consecutive to any other term imposed."  (ECF No. 10-1, Tr. 6.)  The court then told Murphy the one and three-year firearm specifications on Count 6 will merge.  *Id*. When discussing Count 9, the felonious assault charge to which Murphy plead guilty, the court explained it could impose a sentence of two to eight years on the base charge in addition to the one and three year firearm specifications associated with that charge, and it was again noted that it would be served "prior to and consecutive to any other term imposed."  *Id*.  The court stated that the one and three-year firearm specifications on Count 9 will merge.  *Id*.  The Court did *not* state that the two three-year firearm specifications would merge with one another.  As such, Murphy's complaint that he was not informed that he could face a minimum sentence of eleven

---

[7] Initially, the court had indicated three to ten years, which was later corrected to three to eleven.  After the correction, Murphy was afforded an opportunity to withdraw his plea.  (ECF No. 10-1, Tr. 6, 14-15.)  He declined to do so.  *Id*.

-19-

years is inaccurate.  A sentence of three years for aggravated burglary, plus three years for the associated firearm specification, plus two years for felonious assault, plus three years for the associated firearm specification, equals eleven years.[8]

Murphy also argued before the state court that the sentencing court's hypothetical scenario of eight years, wherein the three year firearm specifications merged, misled him.  The state appellate court correctly noted that the trial court started the hypothetical by stating, "This is not a promise of a sentence."  (ECF No. 10-1, Tr. 8.)  Furthermore, Murphy overlooks that the purpose of the hypothetical was to illustrate how judicial release and mandatory sentences worked.  (ECF No. 10-1, Tr. 8-9.)

Alternatively, assuming for the sake of argument that the sentencing court did not accurately apprise Murphy of the minimum sentence he faced, a habeas violation does not arise unless a state court's decision constituted an unreasonable application of clearly established federal law *as determined by the Supreme Court of the United States*.  Here, Murphy does not cite a single United States Supreme Court decision that stands for the proposition that failure to explicitly inform a defendant in a state criminal proceeding of the *minimum* possible sentence precludes a finding that a guilty plea was entered knowingly, intelligently, and voluntarily.[9]  The cases cited in Murphy's memorandum in support of his petition all involve *federal* criminal proceedings that are not based on constitutional violations but rather on a failure to comply with Federal Rule of

---

[8]  Though the court did not perform the math for Murphy and plainly state eleven years was his minimum prison exposure, the state court's determination is not thereby rendered unreasonable.

[9]  It cannot be disputed that Murphy was fully aware that he could face a sentence as long as 25 years, and that he was not being promised any particular sentence.  (ECF No. 10-1, Tr. 11, 14-15.)

Criminal Procedure 11.[10]  *See U.S. v. Still*, 102 F.3d 118, 123 (5th Cir. 1996); *U.S. v. Whyte*, 3

F.3d 129, 130-31 (5th Cir. 1993), *U.S. v. Siegel*, 102 F.3d 477, 482 (11th Cir. 1996).  Murphy's

Traverse also cites a number of decisions, again almost all involve federal criminal actions rather

than state habeas petitions, which found violations of Fed. R. Crim P. 11 for failing to accurately

apprise a federal criminal defendant of the mandatory minimum penalty.  *See United States v.*

*Carreon-Ibarra*, 673 F.3d 358 (5th Cir. 2012); *U.S. v. Hernandez*, 234 F.3d 252, 255 (5th Cir.

2000);[11] *U.S. v. Watch*, 7 F.3d 422, 429 (5th Cir. 1993); *U.S. v. Martin*, 668 F.3d 787, 792 (6th Cir.

2012) (examining whether failure to comply with Fed. R. Crim P. 11 was harmless error and

finding that "the record amply demonstrate[d] that Martin adequately understood the direct

consequences of his plea at the time of his plea hearing" and any misstatement was "therefore

harmless error."); *U.S. v. Stubbs*, 279 F.3d 402 (6th Cir. 2002) (relying on *United States v. Goins*,

51 F.3d 400, (4th Cir. 1995) which was premised on a violation of Fed. R. Crim. P. 11)).

However, various courts have routinely found that a violation of one of the Federal Rules of

Criminal Procedure does not necessarily provide a basis for state habeas relief as said rules are

not *per se* constitutionally mandated.  *See, e.g., Woolridge v. Kaiser*, 1991 U.S. App. LEXIS

---

[10]  Fed. R. Crim. P. 11(b)(1)(I), requires that before a federal court accepts a guilty plea, it
should ensure that a defendant understands a litany of facts, including "any mandatory
minimum penalty."  Conversely, Ohio Rule of Criminal Procedure 11(C) required the
trial court to determine that "the defendant is making the plea voluntarily, with
understanding of the nature of the charges and of the *maximum* penalty involved, and, if
applicable, that the defendant is not eligible for probation or for the imposition of
community control sanctions at the sentencing hearing." (Emphasis added).

[11]  The quotation Murphy attributes to *U.S. v. Hernandez*, 234 F.3d 252, 255 (5th Cir.
2000) is not to be found therein.  (ECF No. 19 at 5.)  Notably, the *Hernandez* decision
does not support Murphy's position, as it indicates that the requirements of Fed. R. Crim.
P. 11 are "met so long as the trial court advised defendant of the maximum sentence
possible."  *Id.* (*citing Tindall v. United States*, 469 F.2d 92, 92-93 (5th Cir. 1972)).

16114 at ** 9-10 (10th Cir. July 16, 1991) (finding that Fed. R. Crim. P. 11 "is not

constitutionally mandated" and a state court's failure to comply with it did not provide a basis for

habeas relief). "It is now settled that Fed. R. Crim. P. 11 is not a constitutional mandate to the

state courts." *Brown v. Crist*, 492 F. Supp. 965, 967 (D. Mont. 1980); *see also Ahlswede v.*

*Wolff*, 720 F.2d 1108, 1110 (9th Cir. 1983) (finding a violation of a rule of federal criminal

procedure was not cognizable in a petition for habeas corpus."); *accord Range v. Berghuis*, No.

09-10945, 2015 WL 1967030, at *15 (E.D. Mich. Apr. 30, 2015) (finding that a federal rule of

criminal procedure "is not constitutional in nature and does not apply to state criminal

proceedings. It thus does not provide a basis for habeas relief under 28 U.S.C. § 2254."); *cf.*

*Mars v. United States*, 615 F.2d 704, 710 (6th Cir. 1980) ("In *United States v. Timmreck*, 441

U.S. 780, 99 S. Ct. 2085, 60 L. Ed. 2d 634 (1979), the Supreme Court held that failure to comply

in exact detail with Rule 11 of the Federal Rules of Criminal Procedure, was not cognizable in

habeas corpus."); *Zdzierak v. Warden, Chillicothe Corr. Inst.*, 2014 U.S. Dist. LEXIS 82375

(S.D. Ohio June 17, 2014) ("Fed. R. Crim. P. 11(b)(3) requires a district court to 'determine that

there is a factual basis for the plea.' But because this mandate is not grounded in the United

States Constitution, 'the lack of such development will not provide a basis for federal habeas

corpus relief.'")

Murphy does, however, cite two cases that do not rely upon Fed. R. Crim. P. 11. (ECF No.

19 at 6.) In *Gov't of the V.I. v. Greenaway*, 379 Fed. App'x. 247, 250 (3d Cir. 2010), the Third

Circuit Court of Appeals observed that "knowledge of the maximum sentence alone was

constitutionally inadequate to ensure that the defendant entered a knowing and intelligent plea.

Rather, [i]t is at least as important for the accused to be accurately informed of the minimum

-22-

amount of incarceration that he/she will have to serve pursuant to a guilty plea." *Id. citing Jamison v. Klem*, 544 F.3d 236, 251 (3ᵈ Cir. 2006) (internal quotation marks omitted). The *Greenaway* court concluded that the petitioner, not having been informed of the minimum sentence for second degree murder, had not entered a knowing, voluntary, and intelligent plea. *Id*. This Court does not take issue with the *Greenaway* court's observation that it is important to be informed of the minimum amount of incarceration a defendant may be required to serve. As stated above, the Court finds Murphy was informed. However, the Court is assuming *arguendo* that Murphy was misinformed. Nevertheless, the decisions of the Third Circuit, do not meet AEDPA's standard of clearly established federal law as determined by the Supreme Court of the United States. As recently explained by the United States Supreme Court, "AEDPA's standard is intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (internal quotation marks omitted), *citing White v. Woodall*, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (2014); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988, 996 (2013). The *Woods* decision further explained that "clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *Id*. (internal quotation marks and citations omitted). The *Woods* court explained that where "none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court." *Id*. at 1377 (*citing Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 4, 190 L. Ed. 2d 1, 5 (2014) (*per curiam*)).

While it may be clearly established that a guilty plea must be entered knowingly, voluntarily, and intelligently, Murphy has not identified any decision from the United States Supreme Court addressing the specific question of whether a failure to accurately apprise a

-23-

defendant as to the lowest end of the sentencing range causes this standard to be violated.

    As such, Murphy's first ground for relief is without merit.

**B. Ground Two: Ineffective Assistance of Counsel**

    Murphy's second assignment of error is related to his first, except that he argues his guilty plea was invalid based on the ineffective assistance of counsel relating to the plea. (ECF No. 1-1 at 6-8.) Again, Murphy alleges that he was incorrectly told that he could receive a sentence as short as eight years based on the false notion that the two firearm sentences could merge. *Id*.

    "A failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea." *United States v. Broce*, 488 U.S. 563, 574 (1989); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (ineffective assistance of counsel may prevent a defendant from entering a knowing and voluntary plea); *accord United States v. Bradshaw*, 1998 U.S. App. LEXIS 10517 (6th Cir. May 20, 1998) (a claim that a defendant received ineffective assistance of counsel, or that his guilty plea was coerced, is "not ordinarily ... barred by an apparent unconditional guilty plea.") However, "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Id*. (*quoting Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). Where a guilty plea is entered upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[T]he Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Carley v. Hudson*, 563 F. Supp. 2d 760, 771

-24-

(N.D. Ohio 2008) (citing *Hill v Lockhart*, 474 U.S. at 58).  Under *Strickland*, a petitioner must demonstrate the following: 1) "counsel's representation fell below an objective standard of reasonableness" and 2) "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).  To satisfy the second prong in the guilty plea context, a petitioner "must show that there is a reasonable probability that but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. at 58-59.

The state appellate court addressed Murphy's ineffective assistance of counsel argument as follows:

> [*P18]  We also reject Murphy's fourth assignment of error that asserts that his trial counsel was ineffective in advising him that the law required that the sentences imposed on the two firearm specifications would merge.  This contention is not supported by the record.

> [*P19]  A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To determine whether a defendant received ineffective assistance of counsel, we first evaluate whether counsel's performance was deficient, meaning errors were so serious that counsel was not functioning as "counsel" guaranteed to the defendant under the Sixth Amendment. *Id*. at 687.

> [*P20]  If we determine that counsel's performance was deficient under the first prong, we must then determine whether the errors prejudiced the defendant such that the defendant was deprived of a fair and reliable trial. *Id*.  We determine prejudice by analyzing whether "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  "Reasonable probability" is defined as probability sufficient to undermine confidence in the outcome. *Id*.

> [*P21]  Murphy argues, unpersuasively, that his counsel had informed him that the firearm specifications would merge.  First, Murphy points to a portion of the plea colloquy where the trial court set forth a hypothetical scenario regarding Murphy's sentence, including a scenario where the firearm specifications merged. 2 At the end of the hypothetical, the trial court discussed the possibility of judicial

release, stating that if Murphy was to get five years for the felonious assault:

> * * * I could say, I'm sending you to prison for all the time, you can apply
> for judicial release, and after you serve your mandatory period of time
> and/or after the required statutory time before you apply for judicial release,
> and I grant it, then that five years will be held over your head.

Tr. 9. In response, Murphy's trial counsel stated:

> Actually, what we talked about is just that scenario, if you did give
> him a five-year sentence potential on the underlying count, then he
> would have to serve the full five years before he could file * * *

*Id*.

[*P22]  This interaction does not demonstrate that Murphy's trial counsel told him
that the law required the trial court to merge the firearm specifications. Although
it is unclear as to what exactly Murphy and his trial counsel had talked about, the
implication is that they had been talking about how much of the sentence Murphy
would have to serve before he could apply for judicial release. Regardless, this
portion of the transcript does not support Murphy's contention that his trial
counsel misstated the law to him.

[*P23]  Murphy also attempts to prove that his trial counsel misunderstood the
law by pointing to a portion of the sentencing transcript where his counsel argues
that the firearm specifications should merge.  But just because Murphy's trial
counsel requested that the trial court merge the firearm specifications, does not
mean that Murphy's counsel misunderstood the sentencing law or misstated the
law to Murphy.  In fact, Murphy's appellate counsel continues to press this very
same merger argument on appeal in the first assignment of error, while also
conceding that the law might preclude merger.  The record does not reveal that
Murphy' counsel performed deficiently at the plea colloquy or at the sentencing
hearing and we overrule the fourth assignment of error.

*Murphy*, 2013-Ohio-2196 at ¶¶18-23 (footnotes omitted).

The Court cannot find anything unreasonable about the state appellate court finding, based

on the record before it, that counsel did not tell Murphy his firearm specifications would merge.

Moreover, Murphy is unable to establish that there is a reasonable probability that, but for

counsel's alleged errors, he would not have pleaded guilty and would have, instead, insisted on

-26-

going to trial.  It is undisputed that Murphy knew he could face a sentence as long as twenty-five years.  (ECF No. 10-1, Tr. 14.)  In addition, as discussed above in the context of ground one, the trial court informed Murphy of the potential sentences he faced on each offense specifying both the low end and high end of the range.  (ECF No. 10-1, Tr. 6, 14-15.)  Finally, it is also undisputed that the trial court repeatedly told Murphy that he was not promised any specific sentence; and, Murphy repeatedly stated that he understood and was not promised anything in return for his guilty plea.  (ECF No. 10-1, Tr. 4, 8, 11.)  Under these circumstances, it is simply implausible for Murphy to argue that he would not have plead guilty.  Therefore, no prejudice has been shown.

## V.  Conclusion

For the foregoing reasons, it is recommended that Murphy's Petition be DENIED.

/s/ Greg White_____
U.S. MAGISTRATE JUDGE

Date: October 27, 2015

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**